# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANYALE W. DAVIS,
    Plaintiff,

v.                                                                            Case No. 19-C-499

WILLIAM POLLARD,
STEVE SCHUELER, and
JOHN KIND,
    Defendants.

## ORDER

Plaintiff Danyale W. Davis, who is a Wisconsin state prisoner representing himself, filed this civil rights case claiming that the defendants violated his rights under the Eighth Amendment to the United States Constitution. The plaintiff alleges that the Green Bay Correctional Institution uses ladderless bunk beds and that he injured himself while trying to climb out of the top bunk of his bed without using a ladder. The defendants have filed a motion for summary judgment. I will grant the defendants' motion and dismiss this case.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Fed. R. Civ. P. 56(c)(4).

## II. FACTS[1]

The plaintiff is confined at the Green Bay Correctional Institution (Green Bay). (ECF No. 25 ¶1.) Defendant Steven Schueler was the deputy warden at Green Bay from May 29, 2016 until April 30, 2019. (*Id.* ¶2) Defendant William Pollard was employed as the warden at Green Bay from March 5, 2005 to March 26, 2011 and acted as interim warden from October 27, 2018 to May 11, 2019. (*Id.* ¶3.) Defendant John Kind has been employed as the security director at Green Bay since April of 2015. (*Id.* ¶4.)

On January 18, 2019, the plaintiff was attempting to exit his top bunk bed. (ECF No. 37 ¶6.) As he stepped onto the bottom bunk bed his foot slipped off the frame and he fell. (*Id.* ¶7.) The plaintiff injured his right elbow and lower back against the desk that was

---

[1] Facts are taken from the defendants' Proposed Findings of Fact and from the defendants' response to the plaintiff's Proposed Findings of Fact. (ECF Nos. 25, 33, 37.) Plaintiff did not file a response to defendants' proposed facts. Defendants' facts are undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(c), (e); Civil L.R. 56(b)(4) (E.D. Wis.).

on the wall. (*Id.* ¶8.) The next day, the plaintiff felt sharp pain in his lower back and a knot on his right elbow. (*Id.* ¶9.) He is still receiving medical treatment for his injuries. (*Id.* ¶10.)

On January 21, 2019, the plaintiff submitted an inmate complaint, GBCI-2019-1396, stating that he had fallen from the top bunk of his bunk bed as he was trying to step out. (ECF No. 25 ¶7.) The institution complaint examiner (ICE) dismissed the complaint, noting that Wisconsin Department of Corrections (DOC) institutions do not require ladders on bunk beds and that there had not been any determination that the lack of ladders presented a serious safety issue. (*Id.* ¶8.) The ICE also stated that the bunk beds "are constructed with heavy duty frame work at the end of the bed which an inmate can use to climb into and out bed very easily[,]" that most inmates have no physical limitations that prevent them from using the framework at the end of the bed to climb onto the top bunk, and that if an inmate feels he has a physical or medical need for a lower bunk restriction he should submit a health service request to the health services unit for evaluation and review of his physical status. (*Id.*) On January 23, 2019, Warden Pollard dismissed the plaintiff's inmate complaint based on the ICE's recommendation. (*Id.* ¶9.) The corrections complaint examiner and DOC Secretary's office dismissed the plaintiff's appeal. (*Id.* ¶10.)

This is the only inmate complaint Pollard responded to regarding ladders on bunk beds during his time as interim warden from October 27, 2018 to May 11, 2019. (ECF No. 25 ¶11.) Pollard does not recall if he was made aware of or responded to any complaints from his time as warden from 2005 to 2011. (*Id.*) He did not receive or review any accident reports regarding falls by inmates resulting from a lack of ladders on the bunk beds. (*Id.*) Pollard does not recall receiving any correspondence from inmates regarding the lack of ladders on bunk beds. (*Id.* ¶12.)

During his time as deputy warden at Green Bay, Schueler recalls being made aware of one inmate complaint regarding the lack of ladders on bunk beds, which was the complaint by the plaintiff. (ECF No. 25 ¶15.) Schueler also did not receive or review any accident reports regarding falls by inmates resulting from a lack of ladders on the bunk beds. (*Id.*)

On March 25, 2019, the plaintiff wrote a letter addressed to the warden, assistant warden, and security director in which he expressed concern regarding the lack of ladders on bunk beds causing injury to inmates at GBCI. (ECF No. 25 ¶16.) On March 28, 2019, Schueler responded to the plaintiff's letter informing him that there were no mandates that DOC institutions must have ladders on their bunk beds. (*Id.* ¶17.) Schueler also informed him that if he felt he had a limitation that prevented him from being able to climb into the top bunk, he should submit a health service request to be evaluated by the health services unit. (*Id.*)

Kind recalls a couple of incidents in which inmates claimed they slipped and injured themselves while climbing in and/or out of the top bunk. (ECF No. 25 ¶21.) When an inmate injures himself, an accident report is sometimes completed by staff members. (*Id.* ¶22.) When a staff member determines that an accident report is needed, he or she will complete the report and submit it to the shift supervisor for further investigation. (*Id.*) Kind's role is to ensure the supervisor follows up on the inmate's medical needs and to verify that it was not the result of any type of physical altercation. (ECF No. 25 ¶24.) The report is then reviewed by the health and safety committee and the warden. (*Id.*)

Kind located one accident report that he responded to where an inmate was injured climbing into the top bunk of his bunk bed. (ECF No. 25 ¶25.) On September 8, 2019, an

4

inmate in the treatment center fell when he was getting up into his bed. (*Id.* ¶26.) The safety officer noted that the inmate in question had inappropriately used the wall-mounted desk to climb up into bed and the desk fell off the wall. (*Id.*) The inmate was treated by the health services unit and was given a bottom bunk and ice. (*Id.*) The inmate was informed not to use the desk to climb into bed. (*Id.*) Kind signed off on this accident report on September 11, 2019. (*Id.*)

Kind does not recall having been copied on any inmate complaints regarding ladders on bunk beds the during his time at Green Bay, nor receiving correspondence from inmates expressing concern about it. (ECF No. 25 ¶¶27-28.)

There are several different types of bunk beds throughout Green Bay. (ECF No. 25 ¶30.) Some bunk beds have ladders, some have high crossbars on the frames, some have low crossbars, and some have no crossbars. (*Id.*) In Kind's opinion, while it would be inherently safer for all bunk beds at Green Bay to have a ladder and a railing, most inmates are capable of climbing up and down from the bunk beds without issue. (*Id.* ¶31.) If an inmate cannot do so, he can write to the health services unit to be evaluated for a low bunk restriction. (*Id.*)

The plaintiff states that he does not use the back of the bunkbed to climb into or out of the bed because he believes it is more dangerous than using the side. (ECF No. 37 ¶12.) According to the plaintiff and inmate Allen Tony Davis, there is a piece of steel welded on the lip of the edge of the bed and it is difficult to "hurdle over the top and then drop on to the top of the bed safely[.]" (*Id.*)

Charles Larsen (not a defendant) is the power plant superintendent at Green Bay and has been the health and safety coordinator since 2017. (ECF No. 25 ¶32.) He serves

5

as the lead of Green Bay's health and safety committee and is responsible for serving as the primary health and safety contact at the institution. (*Id.*) Larsen also reviews all inmate and staff accidents as the safety officer on report forms. (*Id.*)

When an inmate injures himself, an accident report can be completed by staff members, based on their discretion. (ECF No. 25 ¶34.) This accident report is then sent to the shift supervisor for review, who then forwards it to the security director. (*Id.*) The security director reviews the report and then forwards it to the health and safety committee. (*Id.*) When the health and safety committee receives an accident report related to faulty equipment, such as in food service or the wood tech shop, Larsen will investigate the equipment immediately. (*Id.* ¶35.) Larsen checks to ensure it is safe to continue operation and all safety devices and guards are installed properly. (*Id.*) If equipment is not safe, it will be taken out of service until it can be repaired or disposed of, if needed. (*Id.*) The health and safety committee meets once a month. (ECF No. 25 ¶36.) During these meetings, they will review any safety issues, such as any accidents that occurred over the past months as a result of a safety issue. (*Id.*) These meetings include a walk-through of areas where they will follow up to ensure the equipment is still operating as intended with all safety measures and protections. (*Id.*)

Since Larsen took over as health and safety coordinator in the summer of 2017, the only accident report involving an injury related to the lack of ladders on bunk beds was the one from September 2019 when the inmate climbed on his desk to get into a bunk. (*Id.* ¶37.) Based on Larsen's review of accident reports going back to 2010, he could only find two additional accident reports related to injuries from inmates climbing up and down from the top bunk. (ECF No. 25 ¶40.) The first accident report, dated August

6

6, 2013, stated that the inmate was using a chair to get down from his bunk when he slipped and fell. (*Id.* ¶41.) The safety officer reviewed this complaint and signed off on it on August 20, 2013 with no note for further action. (*Id.*) The second accident report, dated June 3, 2014, stated that the inmate caught his foot on the bed and fell to the floor, injuring his head. (*Id.* ¶42.) The safety officer reviewed this complaint and signed off on it on June 5, 2014 with no note for further action. (*Id.*) Because there have been so few accident reports related to inmate injuries due to the lack of ladders on bunk beds, Larsen does not have data indicating that the lack of bedside ladders has created a significant risk of harm to inmates. (*Id.* ¶43.) None of the defendants were involved in responding to the 2013 or 2014 accident report. (ECF No. 37 ¶4.)

In October 2015, Green Bay's then-Deputy Warden Sarah Cooper interviewed the work unit inmates and asked them collectively for five things they would like to see changed. (*Id.*) One of the complaints was to have a ladder put on the bunk beds. (*Id.*) Kind received this information via email. (*Id.*)

In September 2016, Green Bay inmate Allen Tony Davis spoke with Kind and complained about being injured "at one time or another climbing into and/or out of [his] ladderless bunk bed." (ECF No. 37 ¶1.) Kind told inmate Allen Tony Davis that he was aware of the issue, that he had discussed the issue with Schueler, that they had determined that it was not affordable to get hundreds of ladders on bunk beds for inmates, and that it was not a life-threatening matter. (*Id.* ¶2.)

7

In addition to the three accident reports[2] described above, inmates have filed offender complaints regarding Green Bay's ladderless bunk beds. (ECF No. 37 ¶ 4.) In the last ten years or so, inmates other than the plaintiff have filed six offender complaints in which an injury was alleged.[3] (*Id.*) None of the defendants were involved with responding to these inmate complaints. (*Id.*)

In a letter dated January 24, 2020, inmate Allen Tony Davis wrote to Charles Larsen requesting that ladders be placed on the ladderless bunk beds. (ECF No. 37 ¶15.) On January 31, 2020, Charles Larsen replied by letter, stating in part:

> I have reviewed your correspondence and your concerns have been noted. The institution's Health and Safety Committee and Maintenance department is aware of the issue. The Health and Safety Committee is of the opinion and has recommended ladders be installed in all remaining bunk beds. Maintenance Department is currently in the process of submitting a request that this installation and modification to bunk beds be included as part of the upcoming Cell Hall Upgrade Project.

(*Id.*)

---

[2] The plaintiff identified eight accident reports related to bunk beds. (ECF No. 37 ¶4.) However, only the three accidents reports described above potentially relate to the lack of ladders on bunk beds. (*Id.*)

[3] The five offender complaints are: GBCI-2013-19758 (inmate alleges that he fell attempting to get into upper bunk) (ECF No. 35-1 at 24-29); GBCI-2015-11083 (inmate alleges that he used chair to step up to upper bunk and chair broke) (ECF No. 35-1 at 30-35); GBCI-2016-1719 (inmate alleges that he was directed to use chair help him get in top bunk and that he fell using chair to get into top bunk) (ECF No. 35-1 at 57-74); GBCI-2017-23258 (inmate alleges that he fell using chair to get into top bunk) (ECF No. 35-1 at 81-88); GBCI-2018-18111 (inmate alleges that he fell attempting to get to upper bunk) (ECF No. 35-1 at 89-96); GBCI-2019-11463 (inmate alleges that his cellmate fell because bunk beds do not have ladders) (ECF No. 35-1 at 97-100).

## III. DISCUSSION

The defendants contend that they were not deliberately indifferent to a substantial risk of serious harm caused by bunk beds without ladders at Green Bay. (ECF No. 24 at 7.) The defendants also contend that they are entitled to qualified immunity because the plaintiff cannot show that they violated a constitutional right that was clearly established at the time of the alleged violation. (*Id.* at 9.) The plaintiff contends that the defendants had actual knowledge of the ladderless bunk beds at Green Bay causing frequent injuries to inmates climbing into and/or out of the bunk beds and were deliberately indifferent by not putting ladders on the bunk beds. (ECF No. 32 at 3.)

To succeed on an Eighth Amendment claim, the plaintiff must prove that he was incarcerated under conditions "posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He will also have to prove that the defendants knew of and disregarded the substantial risk of serious harm. *Id.* at 837. Only deprivations of basic human needs like food, medical care, sanitation, and physical safety trigger Eighth Amendment scrutiny. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Prison conditions "may be uncomfortable, even harsh, without being inhumane." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664-65 (7th Cir. 2012)). To defeat summary judgment, the plaintiff must show that a factfinder could reasonably conclude that bunk beds without a ladder "exceeded mere discomfort and [was] constitutionally unacceptable." *Id.* (quoting *Rice*, 675 F.3d at 664-65).

The absence of ladders is a common feature of prison bunkbeds. *See Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013). District courts in this

9

circuit have routinely determined that a prison's lack of bunkbed ladders, by itself, does not pose a substantial risk of serious harm.

> Nor is a lack of a ladder in plaintiffs' cells a violation of their constitutional rights. *See Barbosa v. McCann*, Case No. 08 C 5012, 2009 WL 2913488 at *4 (N.D. Ill. Sept. 8, 2009) ("Although it was inconvenient for Plaintiff to use the toilet and sink to climb to his bunk because there was no ladder, routine discomfort is ... not sufficiently grave to form the basis of an Eighth Amendment violation."); *Brown v. Jerome Combs Detention Center*, Case No. 13-2232, 2013 WL 6730837 at *2 (C.D. Ill. Dec. 20, 2013) ("The failure to provide a ladder by which [plaintiff] could ascend to the top bunk does not implicate his Eighth Amendment rights."). Lack of a ladder is, at best, an inconvenience, not a deprivation of the minimum necessities of life.

*Webb v. Brown*, Case No. 2:18-cv-472-JPH-DLP, 2019 WL 6338095, at **1-2 (S.D. Ind. Nov. 27, 2019) (quoting *Gonzalez v. Josephson*, No. 14-cv-4366, 2019 WL 1013737 (N.D. Ill. March 4, 2019)); *see also Blue v. Baenen*, 13-CV-1439, 2016 WL 8711729, at *9 (E.D. Wis. May 20, 2016) (same), *aff'd, Blue v. Baenen*, 681 F. App'x 524 (7th Cir. 2017)); *Richard v. Ill. Dep't of Corr.*, 2016 WL 2941210, at *5 (S.D. Ill. May 20, 2016). On the other hand, an objectively serious condition does exist where there is a risk an inmate will fall attempting to climb into a high bunk due to a medical condition. *See, e.g., Bolling v. Carter*, 819 F.3d 1035 (7th Cir. 2016) (reversing grant of summary judgment for six correctional officers where officers refused to move inmate to a low bunk despite inmate's fall attempting to reach the top bunk and his subsequent acquisition of a low-bunk permit); *Withers*, 710 F.3d at 888 (reversing grant of summary judgment for nurse where nurse left inmate suffering from back pain in cell where he was assigned to top bunk, there was no ladder leading to the top bunk, and plaintiff claimed the nurse knew he could not climb to the top bunk).

10

The plaintiff does not allege that he has any medical or physical condition that prevented him from being able to climb to the top bunk. He also does not state that he requested a low bunk restriction by submitting a health service request to the health services unit. Thus, based on the case law summarized above, the plaintiff's ladderless bunk bed did not pose an objectively serious risk of harm.

Even if, based on the three accident reports and seven offender complaints alleging injury over the last ten years, bunk beds without ladders did pose an objectively serious risk of harm, the plaintiff has not shown that the defendants are culpable. Three accident reports have been filed at GBCI over the last ten years regarding an inmate injury related to the lack of a ladder on a bunk bed. Defendant Kind responded to the September 2019 accident report. Defendants Pollard and Schueler did not have involvement with that accident report, and none of the defendants were involved with the other two accident reports. In addition, inmates have filed seven offender complaints over the last ten years alleging injury related to accessing a bunk bed that did not have a ladder. The plaintiff's offender complaint was one of the seven and defendant Pollard accepted the ICE's recommendation to dismiss the offender complaint. No defendant was involved in responding to the other six offender complaints.

A reasonable factfinder could not conclude that Pollard and Schueler acted with deliberate indifference because they lacked involvement in the accident reports and offender complaints (except for Pollard's dismissal of the plaintiff's offender complaint). The plaintiff has not shown that Pollard and Schueler knew about prisoners' injuries resulting from the ladderless bunks and, therefore, they could not have disregarded any

11

substantial risk of harm.[4] *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (citing *Consolino v. Towne*, 872 F.3d 825, 832 (7th Cir. 2017); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1999)).

Kind was involved in responding to the March 2019 accident report, which occurred after the plaintiff's fall. In addition, he knew in October 2015 that work unit inmates wanted ladders for their bunk beds. And in September 2016, inmate Allen Tony Davis told Kind that he had been injured climbing into and/or out of his ladderless bunk bed. However, while Kind acknowledges that it would be inherently safer for all bunk beds to have a ladder, he believed that inmates without physical limitations could safely climb up and down the framework at the end of their beds to utilize their top bunk and that, if an inmate could not do so, he could write to the health services unit to be evaluated for a low bunk restriction. The combined number of accident reports and offender complaints alleging injury over the last ten years average about one inmate injury per year resulting from the lack of bunk bed ladders. But I need not determine whether one injury per year demonstrates that ladderless bunkbeds posed a substantial risk of serious harm because Kind was not involved in nine of the ten incidents and the one accident report he was involved in occurred after the plaintiff's fall. Simply put, the plaintiff has not shown that Kind disregarded a substantial risk of serious harm. *See id.*

In sum, the defendants did not disregard a substantial risk of serious harm. Thus, I will grant their motion for summary judgment and dismiss this case.

---

[4] The plaintiff's March 25, 2019 letter to the warden, deputy warden, and security director, to which Schueler responded, was submitted after the plaintiff's fall.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 16th day of July, 2020.

                                                  s/Lynn Adelman
                                                  LYNN ADELMAN
                                                  United States District Judge